UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LUIS NIEVES,

                            **Plaintiff,**                05-CV-00017S(Sr)

v.

C.O. BOOKER,
C.O. JOHNSON, and
CORRECTIONS COUNSELOR ZIMMERMAN,

                            **Defendants.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment. Dkt. #72.

Currently before the Court is defendants' motion for summary judgment. Dkt. #94. For the following reasons, defendants' motion is granted.

## PROCEDURAL BACKGROUND

Plaintiff, Luis Nieves, a former inmate of the New York State Department of Corrections and Community Supervision ("NYSDOCCS"), paid the filing fee and commenced this action, *pro se*, pursuant to 42 U.S.C. § 1983, in the Eastern District of New York on November 12, 2004. Dkt. ##1 & 3. The matter was transferred to the Western District of New York, which granted summary judgment to defendant Frances Gonzalez. Dkt. #36. Thereafter, the Court dismissed plaintiff Maya Jones as a party. Dkt. #77.

## FACTUAL BACKGROUND

Plaintiff's amended complaint alleges that on June 28, 2004, while in the Special Housing Unit ("SHU"), at the Attica Correctional Facility ("Attica"), Corrections Officer ("C.O.") J. Johnson conducted a random search of plaintiff's cell. Dkt. #79, ¶¶ 8-9. During this search, C.O. Johnson and the porter accompanying him, a gang leader named Billy, stole plaintiff's property, including "personal and private papers and documents . . . containing names, numbers and addresses" for plaintiff's "family, lawyers [and] banks." Dkt. #79, ¶ 10. Plaintiff subsequently observed Billy passing these addresses and phone numbers to other members of his gang. Dkt. #79, ¶ 13. Plaintiff alleges that his incoming and outgoing mail with his wife, family, friends, attorneys, and law enforcement agencies was intercepted and "[B]illy was observed answering all of plaintiff's incoming mail" which had been "given to him by C.O. Johnson and C.O. Booker. Dkt. #79, ¶¶ 15-16.

On August 4, 2004, plaintiff alleges that he handed a sealed letter of complaint addressed to the Superintendent or Sergeant of Attica detailing his difficulties with C.O. Booker and C.O. Johnson to Corrections Counselor Zimmerman, who gave it to C.O. Booker, who gave it to Billy. Dkt. #79, ¶¶ 22-25.

Plaintiff also alleges that on August 5, 2004, he gave C.O. Booker a letter addressed to the New York City Police Department,[1] which contained the address of his

---

[1] In support of his prior motion for summary judgment, plaintiff attached a copy of his August 5, 2004 letter to the 83rd Precinct of the New York City Police Department requesting that the police send undercover officers to the home of his wife and family members to remove them before they were kidnaped and murdered by gang members. Dkt. #10, pp.16-17.

wife and family members, and observed C.O. Booker place the letter "into the Security Mail box for the outgoing mail." Dkt. #79, ¶¶ 17-18. Shortly thereafter, plaintiff observed Billy passing xeroxed copies of the letter to other inmates, who wrote letters to his wife, family members and the New York City Police Department, thereby misleading the New York Police Department's investigations and endangering plaintiff and his family. Dkt. #79, ¶¶ 17-21.

Plaintiff claims that the diversion of his mail violated his First Amendment rights; the search and seizure of his personal information violated his Fourth Amendment rights; and the defendants' failure to safeguard his personal property and their deliberate indifference to his right to communicate with his family violated his right to privacy under the due process clause of the Fourteenth Amendment and his Eighth Amendment rights to be free from cruel and unusual punishment. Dkt. #79.

When questioned at his deposition as to the source of his knowledge for the allegations set forth in his complaint, plaintiff testified that federal government surveillance recorded everything and relayed messages to him through wireless communications which exposed him to radioactive material. Dkt. #91. Plaintiff's complaint also alleges that he was subjected to satellite and radar surveillance under the U.S. Patriot Act which extracted information from his brain waves and shocked his central nervous system. Dkt. #79, ¶¶ 42-45. Plaintiff acknowledges that he suffers from mental illness. Dkt. #79, ¶ 28.

Maya Jones' deposition testimony denies receiving any correspondence from anyone other than plaintiff, denies being threatened and denies any knowledge of other inmates impersonating plaintiff or stealing information and using it to harass her. Dkt. #92, pp.6-7, 10 & 25. Ms. Jones testified that

> All my correspondence has been from [plaintiff]. To the point where we don't even open the mail anymore. We throw it in the garbage.

Dkt #92, p.8. Ms. Jones is divorced from plaintiff and asked to be placed on plaintiff's no contact list. Dkt. #92, pp.12 & 18-19. By memorandum dated October 12, 2004, the Superintendent of Auburn informed plaintiff that Ms. Jones had informed the facility that she did not wish to receive any communication from him, either in writing or by telephone, and warned plaintiff that disciplinary action would be taken against him if he attempted any further contact with her. Dkt. #10, pp.24 & 39. On October 16, 2004, Maya Jones filed a complaint with the 83rd Precinct alleging that plaintiff sent her threatening letters. Dkt. #17, Exh. H.

## DISCUSSION AND ANALYSIS

Defendants argue plaintiff's claims are fanciful and lack factual support. Dkt. #96.

Plaintiff failed to respond to defendants' motion despite receiving notice of the requirements of Rule 56 of the Federal Rules of Civil Procedure and the consequences of noncompliance therewith, as set forth in *Irby v. New York City Transit Authority*, 262 F.3d 412 (2d Cir. 2001). Dkt. #94.

**Motion for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute. The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

**42 U.S.C. § 1983**

42 U.S.C. § 1983 "permits an individual deprived of a federal right by a person acting under color of state law to seek compensation in federal court." *Wimmer v. Suffolk Cty Police Dep't*, 176 F.3d 125, 136 (2d Cir.), *cert. denied*, 528 U.S. 964 (1999). To prevail on a claim pursuant to § 1983, "plaintiff must prove that the challenged conduct was attributable at least in part to a person acting under color of state law, and that the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Id.* at 137.

Plaintiff cannot maintain a claim that he was subjected to an unreasonable cell search because "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984); See *Willis v. Artuz*, 301 F.3d 65, 69 (2d Cir. 2002) ("convict has no expectation of privacy in his prison cell."). Moreover, any claim that defendants violated his due process rights by refusing to return seized property must

fail since New York State courts provide adequate post-deprivation remedies. *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996).

It is well-established that prison inmates have a First Amendment right to petition the Government for a redress of their grievances, which includes the right of reasonable access to the courts. *Amaker v. Hakes*, 919 F. Supp. 127, 130 (W.D.N.Y. 1996). In order to state a valid claim, however, the inmate must allege facts tending to show that the alleged deprivation actually interfered with his or her access to the courts or prejudiced an existing action." *Id.* Plaintiff's vague allegations that his legal mail from attorneys and law enforcement agencies was withheld from him and diverted to inmate Billy is insufficient to establish this element.

"In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). Again, however, plaintiff must demonstrate actual injury resulting from the interference with his correspondence. *Id.* Plaintiff cannot meet this burden in light of Ms. Jones' deposition testimony that she received and discarded correspondence from plaintiff and asked prison officials to prevent plaintiff from corresponding with her. Dkt. #92, p.8.

"Under certain circumstances the disclosure by prison officials of inherently confidential and sensitive information regarding an inmate can support a due process violation claim under the Fourteenth Amendment." *Dorsey v. Fisher*, No. 09-

CV-1011, 2010 WL 2008966, at * (N.D.N.Y. May 19, 2010). For example, sensitive medical information, such as HIV status, transexualism or diagnosis of mental illness, may be protected from disclosure to other inmates under the confidentiality prong of privacy interests recognized in Whalen v. Roe, 429 U.S. 589 (1977). See Taylor v. Macomber, No. 97 Civ. 4127, 1999 WL 349696, at *2-3 (S.D.N.Y. May 27, 1999) (collecting cases). The information plaintiff alleges to have been disclosed, to wit, names, address and numbers for plaintiff's family, lawyers and banks, does not rise to the level of confidential and sensitive information which has been afforded constitutional protection.

Plaintiff's remaining allegations are dismissed as factually frivolous. See Denton v. Hernandez, 504 U.S. 25, 32-33 (1992) (court may dismiss a claim as factually frivolous only if the facts alleged are "clearly baseless," a category encompassing allegations that are "fanciful, "fantastic" and "delusional.").

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Dkt. #94), is granted.

**SO ORDERED.**

DATED:   Buffalo, New York
         August 28, 2013

                                          s/ H. Kenneth Schroeder, Jr.
                                          **H. KENNETH SCHROEDER, JR.
                                          United States Magistrate Judge**